## OSTERHOUDT v. FEDERAL SUGAR RE-FINING CO.

### THE FRANCIS SCULLY.

Circuit Court of Appeals, Second Circuit. November 14, 1927.

### No. 38.

1. **Collision** ⊂⊐115—Barge mooring outside another must not overburden lines of inside barge, and is liable for damage, so resulting.

A barge mooring alongside a pier need put out no more lines than are necessary for her own weight, but another barge mooring outside of her is bound not to overcharge lines of the first, and, if she does, she is liable, where fasts broke and barges drifted into another vessel.

2. **Collision** ⊂⊐70—Outside barge is required to ascertain size, condition, and number of lines to pier.

Duty of barge mooring outside of another, moored alongside a pier, not to overburden lines of inside barge, involves acquainting herself with size, condition, and number of lines to pier, and there is prima facie fault, where lines broke and vessels drifted into another, for inside barge owes her no duty to strengthen her own position.

3. **Collision** ⊂⊐115—Outside barge must put out such lines to pier as are necessary to hold her added weight.

Outside barge was bound to put out such lines to pier as were necessary to hold her added weight, and was charged with notice of condition of inside barge's lines, but inside barge, permitting other to lie alongside for two weeks without protest, became privy to fault of outside barge, if any, where lines broke and barges drifted into another.

4. **Collision** ⊂⊐115—Both inside and outside barge, knowing of unsound condition of lines are liable for damage for drifting into another barge.

If unsound condition of inside barge's lines was as apparent to outside barge as to inside barge, both are liable for damage to another

barge, into which they drifted on lines breaking; the inside barge for using lines and acquiescing in other's dependence on them, and the outside barge for depending on them.

5. **Collision** ⊂⊐115—Both inside and outside barge, lines of former of which parted and that of latter slipped, held liable for damage to libelant's barge, into which they drifted.

Where lines of inside barge had parted, and those of outside barge slipped, causing barges to foul two others, resulting in all four of them drifting into libelant's barge, *held*, that both inside and outside barge will be held equally liable, where it cannot be determined whether inside barge's lines parted before those of other slipped, or vice versa.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in personam by Alexander S. Osterhoudt, owner of the barge Universe, against the Federal Sugar Refining Company, owner of the barge Francis Scully, and in rem against the barges Queen Anne, Francis Scully, Mary F. Scully, and Josephine Scully. From the decree (14 F.[2d] 319), holding it solely at fault, the Francis Scully and its owner appeal. Decree modified.

`Appeal from a decree in a suit in admiralty, holding liable the barge Francis Scully in rem, and the respondent Federal Sugar Refining Company in personam, and dismissing the libel as against the barges Josephine Scully, Mary F. Scully, and Queen Anne.

The libel was for injuries suffered by the libelant's barge Universe, while berthed on the south side of respondent's pier in the Hudson river at Yonkers, New York. This pier runs out into the river some 200 feet and forms the north side of a slip, the south side of which is only 100 feet long and terminates at the bulkhead line. At the time in question there were moored to the bulkhead and near the slip the two barges, Josephine Scully and Mary F. Scully, side by side. At a short interval to the south of these lay the Francis Scully and the Queen Anne, also side by side and fast to the bulkhead. The Francis Scully was the inside barge and was moored by a number of lines. The Queen Anne made fast to the Francis Scully, being assigned to that berth by the respondent, and put out a single line from her southern end to a bollard on the bulkhead. Thus the two barges had lain for two weeks.

On January 18, 1923, the ice in the river being solid, a tug broke her way into the slip, and then left, moving south along the bulkhead, outside the barges. Her disturbance of the ice and the strength of the flood caused the fasts of the Francis Scully to part,

and the single fast of the Queen Anne to slip on the barge's bitt. Thus set free, these two barges fouled the two lying to the north of them along the bulkhead and broke them loose. The flood tide then floated all four down upon the Universe, causing the damage in question.

The District Judge dismissed the libel as to the Josephine Scully and the Mary F. Scully during the trial, and later held the respondent and the Francis Scully solely liable. He found that the Francis Scully's fasts were unsound and had parted before the Queen Anne's slipped upon her bitt, and, as a single line could not alone have held both barges anyway, he concluded that the Queen Anne's fault in ill bending her fast did not contribute to the loss.

Park, Mattison & Lynch, of New York City (Frank P. Treanor, Jr., of New York City, of counsel), for appellants.

William F. Purdy, of New York City, for libelant.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer, of New York City, of counsel), for the Josephine Scully and the Mary F. Scully.

Thomas E. Murray, Jr., of New York City, for the Queen Anne.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). [1, 2] When a barge moors alongside a pier, she is bound to put out no more lines than are necessary for her own weight. On the other hand, if another barge moors outside of her, she is bound not to overcharge the fasts of the first, and if she does she is liable. Pennsylvania R. R. Co. v. McWilliams, 277 F. 798 (C. C. A. 2); McWilliams v. Davis, 285 F. 312 (C. C. A. 2); The No. 225, 272 F. 130 (D. C. S. D. N. Y.). This duty involves acquainting herself with the size, condition, and number of the lines to the pier, and is not affected by the fact that the berth is assigned to her, unless she has not sufficient lines of her own and protests. Prima facie she is at fault, for the inside barge owes her no duty to strengthen her own position. However, the inside barge may by acquiescence accept the situation, and, if so, she shares the fault.

[3] When the Queen Anne made fast alongside the Scully, she was therefore bound to put out such lines to the pier as were necessary to hold her added weight, and in her determination of that question she was charged with notice of the condition of the Scully's fasts, so far as their appearance disclosed it. The Scully, by allowing her to lie alongside for two weeks without protest, acquiesced in her precautions, and became privy to her fault, if fault there was.

[4] The judge held that the Scully's fasts were unsound, and we see no reason to disturb his finding. That finding depends chiefly on the testimony of the bargee of the Universe, who said that they were ragged and chafed. If their condition was as apparent to the Queen Anne as to the Scully, both were liable; the Scully for using the fasts and acquiescing in the Queen Anne's dependence upon them, and the Queen Anne for depending upon them.

[5] If, on the other hand, their appearance did not disclose their weakness, still the Queen Anne is liable. There is no way to tell, so far as we can see, whether the Scully's fasts parted before the Queen Anne's slipped, or vice versa. The Scully's bargee says that he saw the Queen Anne's line on the ice before his own parted, and while this seems to us impossible, or nearly, his evidence, so far as it goes, is that the Queen Anne's line gave first. We cannot see how the contrary can be thought more probable. The barges were made fast together and moved as one, so that the strain may well have been upon all the lines at once; so far as there are any inferences to be made, we should suppose this the more probable conclusion. If so, the Queen Anne's fast began to slip either before or at the same time when the Scully's began to part. All would begin to give together.

In that case the failure of the Queen Anne to bend her fast may have contributed to the loss. It is impossible to say how nearly the Scully's fasts, though unsound, came to carrying the weight of both barges. The added strength of the Queen Anne's, if well bent, might have held the two. On the other hand, the unsoundness of the Scully's fasts may have contributed to the loss, because it is impossible to say that they would have carried the weight of both, though reinforced with a well-bent fast of the Queen Anne. Since by acquiescence she was responsible for the situation as it existed, she can charge the Queen Anne only for her failure well to bend her line.

The situation is such that neither barge can prove that the loss was a result solely of the conduct of the other. It is also such that the libelant cannot prove that the fault of either was necessary to the result; for aught that appears, either fault might alone have been enough, though the other had not exist-

ed. However, the case is not one where the tort-feasors acted independently. On the contrary, they mingled their conduct, and, while it is impossible to disentangle the share of each, each prima facie had a hand in the result. In such cases the injured party may leave it to those whom he has shown to be apparently jointly involved to unravel the skein of their own making.

The Federal Sugar Refining Company is liable because the bargee of the Scully was its servant.

Decree modified, by holding the Federal Sugar Refining Company and the Scully liable for half the loss and the Queen Anne for the remainder.