## GOODWIN–GALLAGHER SAND & GRAVEL CORPORATION v. WASHINGTON BULKLEY, Inc., et al. WASHINGTON BULKLEY, Inc., v. GOODWIN–GALLAGHER SAND & GRAVEL CORPORATION et al.

### F. JACOBUS TRANSP. CO., Inc., v. SAME.

District Court, E. D. New York.
December 20, 1927.

Macklin, Brown, Lenahan & Speer, of New York City, for Goodwin-Gallagher Sand & Gravel Corporation.

Bailey & Single, of New York City, for Washington Bulkley, Inc.

William F. Purdy, of New York City, for F. Jacobus Transportation Company, Inc.

CAMPBELL, District Judge. On stipulation the three above entitled suits were tried together, and, as the facts are the same in each suit, one opinion will suffice.

In the third above entitled suit Washington Bulkley, Inc., was impleaded under the fifty-sixth rule in admiralty on the petition of Goodwin-Gallagher Sand & Gravel Corporation.

On the 14th day of December, 1923, F. Jacobus Transportation Company chartered the scow Margie A., with bargeman, to Goodwin-Gallagher Sand & Gravel Corporation under a certain charter agreement, confirmed by a writing dated December 14, 1923, at a certain price per day, charter period to commence on March 15, 1924, and to continue until December 31, 1924.

Pursuant to said charter the said F. Jacobus Transportation Company delivered the scow Margie A. to the said Goodwin-Gallagher Sand & Gravel Corporation on the 15th day of March, 1924, and said scow remained in the care, custody, and control of the said Goodwin-Gallagher Sand & Gravel Corporation until the 29th day of December, 1924, when she was returned to F. Jacobus Transportation Company, Inc., not in the condition when received, but damaged and broken, and with some of her equipment missing, and such damage, breaking, and loss of equipment was not the result of ordinary wear and tear.

In December, 1924, Goodwin-Gallagher Sand & Gravel Corporation sold to Washington Bulkley, Inc., a cargo of gravel to be delivered on board scow, the scow when loaded to be delivered at the mouth of Wallabout Canal, thence to be hauled by the workmen of Washington Bulkley, Inc., to its plant, where it maintained, operated, and controlled a cer-

tain bulkhead or landing place for scows consigned to it and loaded with sand, gravel, and similar material.

Some time before 4 o'clock p. m. on the 22d day of December, 1924, the scow Margie A., in a good, seaworthy condition, with a cargo of gravel on board, was made fast at the end of pier 1, Wallabout.

At 4 o'clock p. m. on that day a measurer of cargo for Goodwin-Gallagher Sand & Gravel Corporation measured the cargo on the scow, and thereafter presented the card with his measurements at the office of Washington Bulkley, Inc., where it was signed by the representative of that corporation.

There was no captain aboard the scow at that time when the cargo was measured.

This fact the measurer reported to his own office, but not to Washington Bulkley, Inc.

When the measurer told the representative of Washington Bulkley, Inc., that the scow was at the end of the pier and had been measured, Washington Bulkley, Inc., sent two men, Tom Wallace, a colored man, and Louis Esposito, an Italian, to move the scow up into the canal.

■ There is a sharp conflict in the evidence as to whether the captain was on the scow Margie A. at the time she was shifted, but I do not agree with the contention of the advocate of Washington Bulkley, Inc., that the testimony of Wallace must be accepted; on the contrary, I think the testimony of Manuel Romano, captain of the Goodwin-Gallagher scow No. 82, entitled to as much weight, and that he was in a position to know; and further, Washington Bulkley, Inc., having failed to show any reason for not calling their other employee engaged in moving the scow, Louis Esposito, it must be presumed that, if called, his testimony would not have been favorable to his employer. The Eastchester (C. C. A.) 20 F.(2d) 357.

■ The captain of the scow Margie A. not being on the boat when she was shifted, the burden of attending to the scow, in the berth to which she was moved, was placed on Washington Bulkley, Inc. The Thomas Quigley (C. C. A.) 130 F. 336.

■ In any event, if the captain of the scow did assist in moving her up the canal, he did so as the servant or agent of Washington Bulkley, Inc., as it was the duty of that corporation to move the scow and its custom to pay the captains of scows for such services.

The scow was pulled up the canal by Wallace and Esposito, the two agents or servants of Washington Bulkley, Inc., and they selected the berth which was alongside the dock between the D. L. & W. and the bridge, and almost opposite the dump office of the department of street cleaning on the other side of the canal.

■ From all the testimony, it would appear that the lines were made fast with a good lead, but the berth was not a safe one, and this appears to have been well known to those who were familiar with conditions in the canal, and, whether the captain of the scow was present or absent when the scow was tied up, there is no evidence that he was apprised of the dangerous condition of the berth or of any necessity for breasting off the scow.

If the captain left the scow unattended in the berth where she was placed by the men from Washington Bulkley, Inc., it was not negligence. The Kathryn B. Quinan (C. C. A.) 176 F. 301.

When the tide began to fall, the scow commenced to list away from the dock or bulkhead, and, as the tide fell, she listed more and more, her rail on the side away from the dock or bulkhead went under water, and the water washed the cargo off little by little, until in the morning she dumped her cargo, swung back against the dock and sustained damage, and then swung out and parted her bow line. Her stern line remained fast.

■ There was a lump extending out some distance from the dock where the Margie A. was moored, and this lump made the berth unsafe, and the consignee, Washington Bulkley, Inc., was bound to exercise reasonable diligence to ascertain its condition and to provide a safe berth. Smith v. Burnett, 173 U. S. 430, 19 S. Ct. 442, 43 L. Ed. 756. This it failed to do.

■ Even if the captain had been present when the Margie A. was moved, the action of the agents or servants of Washington Bulkley, Inc., in mooring the scow in that berth, without any warning to the captain of any danger to be avoided, was an implied assurance that the berth was good. Philadelphia & R. R. Co. v. Walker (D. C.) 139 F. 857; Look v. Portsmouth, K. & Y. St. Ry. (D. C.) 141 F. 182; P. Dougherty Co. v. Bader Coal Co. (D. C.) 244 F. 267; The Eastchester (C. C. A.) 20 F.(2d) 357.

F. Jacobus Transportation Company, Inc., is without fault.

■ Washington Bulkley, Inc., being responsible for the scow Margie A. dumping her cargo, and neither Goodwin-Gallagher Sand & Gravel Corporation nor F. Jacobus Transportation Company, Inc., having in any way contributed thereto, Washington Bulkley, Inc., is liable for the removal of the cargo.

■ Washington Bulkley, Inc., is solely at

fault and liable to Goodwin-Gallagher Sand & Gravel Corporation for the value of the cargo, and primarily liable to F. Jacobus Transportation Company, Inc., for damages to the scow, but, as the Goodwin-Gallagher Sand & Gravel Corporation are liable for the return of the scow in the same condition as received, except damages occasioned by ordinary wear and tear, they are secondarily liable for the damages to the scow caused by the failure of Washington Bulkley, Inc., to furnish her with a proper berth.

A decree may be entered in the first above entitled suit in favor of the libelant Goodwin-Gallagher Sand & Gravel Corporation against Washington Bulkley, Inc., with costs and the usual order of reference, and dismissing the libel as to F. Jacobus Transportation Company, Inc., with costs against the libelant.

A decree may be entered in the second above entitled suit in favor of Goodwin-Gallagher Sand & Gravel Corporation and F. Jacobus Transportation Company, Inc., against the libelant Washington Bulkley, Inc., dismissing the libel, with costs.

A decree may be entered in the third above entitled suit in favor of the libelant F. Jacobus Transportation Company, Inc., against Washington Bulkley, Inc., as primarily liable, and Goodwin-Gallagher Sand & Gravel Corporation as secondarily liable, with costs and the usual order of reference.